IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KENNETH FIELDS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-12-3254 |
| CLIFTON T. PERKINS HOSPITAL, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Plaintiff Kenneth Fields alleges that Defendant Clifton T. Perkins Hospital failed to accommodate his disability, violating Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Presently pending is the Defendant's Motion for Summary Judgment (ECF No. 27). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the Defendant's Motion (ECF No. 27) will be GRANTED.

### BACKGROUND

On a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Defendant Clifton T. Perkins Hospital (the "Hospital") is a psychiatric facility in Jessup, Maryland that is operated by the Maryland Department of Health and Mental Hygiene. The Hospital is a secure inpatient facility for court-committed individuals who have committed crimes, or are accused of having done so. Def.'s Mem. 1-2, ECF No. 28. In 2008, Plaintiff Fields began working at the Hospital as a "Security Attendant I, Nursing,"

also known as a "Psychiatric Security Technician." Am. Compl. ¶ 3, ECF No. 7; Pl.'s Opp. 1, ECF No. 38. In this position, Fields was required to be certified with the Maryland Board of Nursing as a Certified Nursing Assistant and to renew his certification yearly. Def.'s Mem. 1. His job duties included "observing patients, measuring vital signs, implementing delegated nursing interventions, [and] operating medical equipment," but also involved "special physical demands" related to "intervening in patient-to-patient altercating, physically carrying non-compliant patients to seclusion and/or applying restraints." *Id.* at 2. Over the course of his employment, he received positive performance reviews from his supervisors and received a non-competitive promotion to Security Attendant II in 2010. Am. Compl. ¶¶ 4-5; Def.'s Mem. 2.

In early 2010, Fields began experiencing dizziness, nausea, and difficulty walking. Am. Compl. ¶ 6. He was diagnosed with multiple sclerosis and beginning in February took a leave from his employment under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654. *Id.* ¶ 7. His twelve-week FMLA leave period expired in May of 2010 and he then used accrued leave, State employee holidays, and leave days donated by his brother and his friends. Pl.'s Opp. Ex. 3, ECF No. 38-3.

By June of 2010, after undergoing medical care and physical therapy, the Plaintiff's symptoms improved and he wished to return to work. *Id.* ¶ 8. At that time, however, he was not yet able to perform all of the duties of a Psychiatric Security Technician and was consequently only cleared to return to work with restrictions. *Id.* ¶ 9; Pl.'s Opp. Ex. 1, ECF

No. 39 (Sealed).  Most importantly, Fields's physician stated that he could not work in any "safety sensitive" or "dangerous situations due to mobility impairment."[1]  *Id.*

On or about June 23, 2010, the Plaintiff submitted his "return to work slip" to his supervisor, Barbara Rikard.  Am. Compl. ¶ 10.  He stated that he badly wanted to return to work at the Hospital.  Deposition of Kenneth Fields 12-15, ECF No. 27-4.  The Hospital had previously placed employees who needed modified duty in the minimum security North Side; the Plaintiff alleges that he personally knew several other Security Attendants who were transferred to modified duty positions for health reasons, including mobility impairments.  *Id.* ¶¶ 11, 18; Pl.'s Opp. 9.  Rikard stated that this was the Hospital's usual practice and that Fields probably would be assigned to work on the North Side.  Am. Compl. ¶ 11; Fields Dep. 15.

However, when Fields then met with the Hospital's Director of Human Resources, Stacie Beverly, she told him that there were no modified duty positions available.  Fields Dep. 25.  The Plaintiff states that although Ms. Beverly was the person tasked with handling disability-related claims on behalf of the Hospital, she had no training or understanding of the Americans with Disabilities Act or the State Reasonable Accommodations Policy issued by the Department of Budget and Management.  Pl.'s Opp. 3-11; Pl.'s Opp. Ex. 6, ECF No. 38-6.  She did not consider that Fields was requesting a reasonable accommodation, and the Plaintiff argues that she thus failed to engage in the "interactive process" required by the Rehabilitation Act.  *Id.*  Ms. Beverly then referred Fields to the State Medical Director,

---

[1] Other specific medical information contained in this and other documents was sealed.  For purposes of this Motion, the sealed information is immaterial to the question of whether the Defendant violated the Rehabilitation Act by failing to reasonably accommodate Mr. Fields.

stating that he had presented a doctor's certificate that he could return to work only with "restrictions that this facility are [sic] unable to accommodate." *Id.* at 11.

Dr. Mike Lyons of the State Medical Director's Office evaluated Fields on July 1, 2010. Pl.'s Opp. Ex. 11, ECF No. 39-2 (Sealed). In his report, Dr. Lyons stated that although Fields would like to return to work in a modified position, the Hospital could not accommodate him. *Id.* The State doctor further informed the Plaintiff that he should "get his financial things in other because it didn't look like he would be returning." Fields Dep. 21, 50. Thereafter, the Plaintiff's Certified Nursing Assistant certificate expired on July 28, 2010. The Plaintiff states that he did not renew his certificate because Dr. Lyons told him that he would not be returning to work. *Id.* at 38-39. As a result of the determination that he could not return to his old position, and that no light duty positions could accommodate him, the Plaintiff applied for involuntary medical retirement on September 1, 2010. *Id.* at 47-49.

While his retirement application was being processed, the Plaintiff had a follow-up appointment with Dr. Lyons on September 3, 2010. *Id.* The doctor noted that Fields was no longer in physical therapy, had more strength in his arm, and was able to walk without a cane. Am. Compl. ¶ 28; Dr. Lyons Report of Sept. 7, 2010, ECF No. 28-3 (Sealed). Still, the doctor opined that Fields was "unlikely to improve enough in the foreseeable future that would enable him to safely, consistently, and reliably perform the full duties of [the Psychiatric Security Technician] position. Therefore, the agency is advised to start appropriate administrative steps regarding his employment status." Am. Compl. ¶¶ 28-29; Dr. Lyons Report of Sept. 7, 2010, ECF No. 28-3 (Sealed).

Upon receiving such a recommendation from the State Medical Director's Office, Human Resources Director Ms. Beverly would normally have issued an "options" letter to the employee, detailing procedures for applying for disability, seeking reasonable accommodations, or being terminated. Deposition of Stacie Beverly 137-45, ECF No. 27-9. However, she did not do so on this case because, according to her, Fields's application for retirement made the issue moot. Am. Compl. ¶ 31. Therefore, Beverly stated that Fields was never denied reassignment because he never asked for it. *Id.* ¶ 32. By the time Fields's involuntary medical retirement was finalized, he had been on paid leave from work at the Hospital from February 26 to September 30, 2010, a period of approximately seven months. Affidavit of Stacie Beverly, ECF No. 28-1 (Sealed). In addition, the Hospital held Fields's position open during this time on the chance that he was able to return. *Id.*

Fields filed a claim with the Equal Employment Opportunity Commission, alleging that the Hospital discriminated against him by denying his request for reasonable accommodation and his request for reassignment. The EEOC denied his claim and issued him a right to sue letter, exhausting his administrative remedies. Then, Fields filed suit *pro se* in this Court against the Hospital. *See* ECF Nos. 1 & 1-1. The Plaintiff ultimately retained counsel and filed an Amended Complaint against the Hospital and the Secretary of the Maryland Department of Health and Mental Hygiene, Joshua M. Sharfstein, asserting claims for violations of the Rehabilitation Act and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and for breach of his employment agreement. *See* ECF No. 7. The Defendants moved to dismiss the Amended Complaint and the Plaintiff voluntarily dismissed the claims under the Americans with Disabilities Act and for breach of contract.

5

This Court also dismissed Mr. Sharfstein, leaving only the Rehabilitation Act claim against the Hospital.  *See* ECF No. 17.  After a period of discovery, the Defendant Hospital moved for summary judgment as a matter of law on the single remaining claim.

STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id.* at 249.  In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

However, there must be a "*genuine*" dispute as to those facts.  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting *Anderson*, 477 U.S. at 247-48 (emphasis in original))).  This Court must abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.

*Anderson*, 477 U.S. at 249-50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

ANALYSIS

Section 504 of the Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). It is a violation of the Rehabilitation Act to fail to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A); *see Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001) (holding that analysis of "failure to accommodate" language of the Americans with Disabilities Act applies to Rehabilitation Act claims).

To prove a Rehabilitation Act violation, a plaintiff must show that: (1) he suffers a disability under the statute; (2) with or without reasonable accommodations, he is otherwise qualified to perform the employment position in question; and (3) he was excluded from that employment because of his disability. *McDavid v. Arthur*, 437 F. Supp. 2d 425, 428 (D. Md. 2006) (citing *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995)). To be "qualified" under the Act, a court must determine: (1) whether an individual can

"perform the essential functions of the job, *i.e.*, functions that bear more than a marginal relationship to the job at issue," and (2) if not, whether "any reasonable accommodation by the employer would enable [him or her] to perform those functions." *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 212 (4th Cir. 1994).

This Court assumes, for purposes of this Motion, that the Plaintiff's multiple sclerosis was sufficiently severe to render him disabled under the Rehabilitation Act. Indeed, the Plaintiff admits that throughout the time he was applying to return to work, he was unable to perform the essential functions of the position of Psychiatric Security Technician. The Defendant argues that it reasonably accommodated the Plaintiff by allowing him the take paid leave while holding his position open for his possible return.

This Court has previously held that leave may be a reasonable accommodation, but an employer is not required to provide an indefinite period to treat a disabling condition. *Moore v. Md. Dep't of Pub. Safety*, No. CCB-11-0553, 2013 U.S. Dist. LEXIS 19471, at *10 (D. Md. Feb. 13, 2013) (holding that defendant did not violate the Rehabilitation Act by placing plaintiff on medical leave without pay after she missed eight months of work for cancer treatment) (citing Appendix: Interpretive Guidance, 29 C.F.R. § 1630.2(o) (2011) ("[O]ther accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment . . . .")); *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995). In this case, the Plaintiff was on paid leave from employment at the Hospital for a total of seven months. The Hospital allowed him to use FMLA leave, accrued leave, and donated leave, while keeping his position open. The Plaintiff does not argue that it was unreasonable for the Hospital to allow him to stay out of work for this period while he was

still employed and paid through leave, in one form or another. However, the Plaintiff argues that the Defendant failed to accommodate him by not allowing him to return to work in a different position on the Hospital's North Side.

The Plaintiff has the burden to demonstrate that an accommodation is reasonable. *Wells v. BAE Sys. Norfolk Ship Repair*, 483 F. Supp. 2d 497, 509 (E.D. Va. 2007), *aff'd*, 250 F. App'x 552 (4th Cir. 2007) (per curiam). Offering a different employment position as a reasonable accommodation is typically a last resort. *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 742 (D. Md. 1996) (citing Appendix: Interpretive Guidance, 29 C.F.R. § 1630.2(o)); *see also School Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 289 n.19 (1987) ("Although [employers] are not required to find another job for an employee who is not qualified for the job he or she was doing, they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies.").

After discovery in this case, the Plaintiff has not adduced sufficient evidence to show that assigning him to the North Side of the Hospital was a reasonable accommodation. Although he states that the Hospital had assigned certain other employees to lighter duty positions on the North Side, the Plaintiff has not shown that any such positions were available at the relevant time, or why creating a new position would have been reasonable. Ms. Beverly noted Fields's physician's opinion that he could only return to work with "restrictions that this facility [is] unable to accommodate." Pl.'s Opp. Ex. 10, ECF No. 39-2 (Sealed). Dr. Lyons concurred in this assessment. Pl.'s Opp. Ex. 11, ECF No. 39-2 (Sealed). Although the Plaintiff argues that Ms. Beverly should have been able to identify other positions to which he could have been transferred, his conclusory allegations in this regard

are insufficient to create a genuine issue of material fact as to whether such positions existed. His identifying specific, isolated tasks he could have performed despite his physician's restrictions is not sufficient show that the Hospital could have accommodated him by transferring him to a reasonably available alternative position.

The Plaintiff's argument similarly fails in his contention that the Defendant failed to engage in an interactive process required under the Rehabilitation Act, or that any such failure was a violation of the Act. *Wells*, 483 F. Supp. 2d at 511 ("the employee must demonstrate that the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the qualified employee."). Despite Ms. Beverly's alleged failure to recognize that Fields was requesting an accommodation, and her failure to identify available positions that the Plaintiff could perform, the Plaintiff had several contacts with Defendant's personnel regarding his request to return to work in a different job. The Plaintiff cannot show that any failure in this process resulted in the failure to identify a reasonable accommodation because, as noted above, he has not shown that any other positions were reasonably available.

Furthermore, the Hospital kept Fields's position open while he used leave to which he was entitled. However, there was no projected end date for his working restrictions and the Defendant was not required to provide a further leave period on the chance that a light duty position might come open. *Moore*, 2013 U.S. Dist. LEXIS 19471, at *11 ("Additional medical leave is a reasonable accommodation only where it is 'finite and will be reasonably

10

likely to enable the employee to return to work.'" (quoting *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 2d 589, 596 (S.D. W. Va. 2008)).[2]

Finally, this Court notes that shortly after the State Medical Director's Office determined that the Plaintiff would not likely be able to return to work, he voluntarily let his State nursing certification lapse. The Defendant argues that because Fields was no longer licensed, the Hospital's obligation to reasonably accommodate him was extinguished. The evidence in this case does not reveal that the licensing issue played a role in the Hospital's determination that there were no alternative positions available to Fields. Nevertheless, the Plaintiff's allowing his certificate to expire invariably would have made it more difficult for the Hospital to accommodate him in an alternative position for which a nursing license was required. Fields's failure, through no one's fault but his own, to maintain his nursing certificate, is additional evidence that a transfer to a completely new position was not a reasonable accommodation in this case. Considering all of the circumstances surrounding the Plaintiff's request to return to work, the Defendant did not violate the Rehabilitation Act as a matter of law.

---

[2] Because the Plaintiff has not carried his burden to show why his desired accommodation was reasonable, this Court does not reach the question of whether the Hospital was still not required to transfer him because such accommodation would pose an undue hardship on the Defendant. 42 U.S.C. § 12112(b)(5)(A) (discrimination includes "not making reasonable accommodations . . ., unless such covered entity can demonstrate that the accommodation would impose undue hardship on the operation of the business of such covered entity.").

## CONCLUSION

For the reasons stated above, Defendant's Motion (ECF No. 27) is GRANTED.

A separate Order follows.


Dated: June 19, 2014                                    /s/
                                                      Richard D. Bennett
                                                      United States District Judge